FILED _____ LODGED
_____ RECEIVED

SEP 1 1 2008

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

08-CV-05184-CNST

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

BONNEVILLE HOT SPRINGS, INC.
d/b/a BONNEVILLE HOT SPRINGS
RESORT; PIRFIL ("PETE")
CAM; and ELENA CAM,

                Defendant.

No. C08-5184-RBL

CONSENT DECREE

WHEREAS, the Plaintiff, the United States of America, on behalf of the United States Forest

Service and Army Corps of Engineers ("the Corps"), filed the Complaint herein against

Defendants Bonneville Hot Springs, Inc. d/b/a Bonneville Hot Springs Resort, Pirfil ("Pete")

Cam and Elena Cam (collectively, "Defendants"), alleging that Defendants violated Sections

301(a) and 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a) and committed trespass,

in violation of state law;

WHEREAS, the Complaint alleges that Defendants violated CWA Section 301(a) by

discharging dredged or fill material and/or controlling and directing the discharge of dredged or

fill material into waters of the United States adjacent to Defendant Bonneville Hot Springs

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Resort located in Skamania County, Washington (the "Site") and more fully described in the

2  Complaint, without authorization by the Corps;

3  WHEREAS, the Complaint alleges that Defendants violated and continued to violate CWA

4  Section 404 by placing or allowing fill material to be placed in waters of the United States and by

5  altering the course of a stream, and causing sediment pollution in nearby waterways, as more

6  fully described in the Complaint, without authorization by the Corps;

7  WHEREAS, the Complaint seeks (1) to enjoin the discharge of pollutants into waters of the

8  United States in violation of CWA Sections 301(a) and 404, 33 U.S.C. § 1311(a); (2) to require

9  Defendants, at their own expense and at the direction of the Corps and the United States Forest

10  Service ("USFS"), to restore and/or mitigate the damages caused by their unlawful activities; (3)

11  to require Defendants to pay civil penalties as provided in 33 U.S.C. § 1319(d); and (4) remedies

12  for past trespass and enjoin future trespass on National Forest Service ("NFS") land.

13  WHEREAS, this Consent Decree is intended to constitute a complete and final settlement of

14  the United States' claims under the CWA and state trespass provisions set forth in the Complaint

15  regarding the Site;

16  WHEREAS, the United States and Defendants agree that settlement of this case is in the

17  public interest and that entry of this Consent Decree is the most appropriate means of resolving

18  the United States' claims under the CWA and state trespass provisions against Defendants in this

19  case; and

20  WHEREAS, the Court finds that this Consent Decree is a reasonable and fair settlement of

21  the United States' claims against Defendants in this case, and that this Consent Decree adequately

22  protects the public interest in accordance with the CWA and all other applicable federal law.

23  THEREFORE, before the taking of any testimony upon the pleadings, without further

24  adjudication of any issue of fact or law, and upon consent of the parties hereto by their authorized

25  representatives, it is hereby ORDERED, ADJUDGED and DECREED as follows:

26  I. JURISDICTION AND VENUE

27  1.  This Court has jurisdiction over the subject matter of these actions and over the

28  parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33

CONSENT DECREE – 2
(C08-5184-RBL)

1 | U.S.C. § 1319(b).

2. Venue is proper in the Western of Washington, pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a) because the Defendants conduct business in this District, the Site is located in this District, and the causes of action alleged herein arose in this District.

3. The Complaint states claims upon which relief can be granted pursuant to Sections 301, 309 and 404 of the CWA, 33 U.S.C. §§ 1311, 1319 and 1344.

## II. APPLICABILITY

4. The obligations of this Consent Decree shall apply to and be binding upon Defendants, their officers, directors, agents, employees and servants, and their successors and assigns and any person, firm, association or corporation who is, or will be, acting in concert or participation with any of the Defendants whether or not such person has notice of this Consent Decree. In any action to enforce this Consent Decree against a Defendant, the Defendant shall not raise as a defense the failure of any of its officers, directors, agents, employees, successors or assigns or any person, firm or corporation acting in concert or participation with the Defendant, to take any actions necessary to comply with the provisions hereof.

5. The transfer of ownership or other interest with regards to Defendants' parcel of the Restoration Sites (as described in Appendix A appended hereto and incorporated herein by reference) shall not alter or relieve any Defendants of their obligation to comply with all of the terms of this Consent Decree. At least fifteen (15) days prior to Defendants' transfer of ownership or other interest in the Restoration Site, the party making such transfer shall provide written notice and a true copy of this Consent Decree to its successors in interest and shall simultaneously notify the Corps and the United States Department of Justice at the addresses specified in Section IX below that such notice has been given. As a condition to any such transfer, the Defendant making the transfer shall reserve all rights necessary to comply with the terms of this Consent Decree.

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

# III. SCOPE OF CONSENT DECREE

6.     This Consent Decree shall constitute a complete and final settlement of all civil claims alleged in the Complaint against the Defendants.

7.     It is the express purpose of the parties in entering this Consent Decree to further the objectives set forth in CWA Section 101, 33 U.S.C. § 1251. All plans, studies, construction, remedial maintenance, monitoring programs, and other obligations in this Consent Decree or resulting from the activities required by this Consent Decree shall have the objective of causing Defendants to achieve and maintain full compliance with, and to further the purposes of, the CWA.

8.     Defendants' obligations under this Consent Decree are joint and several.

9.     Except as in accordance with this Consent Decree, Defendants and Defendants' agents, successors and assigns are enjoined from discharging any pollutant into waters of the United States, unless such discharge complies with the provisions of the CWA and its implementing regulations.

10.     The parties acknowledge that Nationwide Permit 32 (72 Fed. Reg. 11092-98) (March 21, 2007) (as clarified by 72 Fed. Reg. 26082-83) (May 8, 2007), authorizes the discharge of dredged or fill material insofar as such discharge is necessary to complete the work required to be performed pursuant to this Consent Decree. Any such discharge of dredged or fill material necessary for work required by this Consent Decree shall be subject to the conditions of the Nationwide Permit and this Consent Decree.

11.     This Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344, or any other law. Nothing in this Consent Decree shall limit the ability of the Corps to issue, modify, suspend, revoke or deny any individual permit or any nationwide or regional general permit, nor shall this Consent Decree limit the Corps' ability to exercise its authority pursuant to Section 404(c) of the CWA, 33 U.S.C. § 1344(c).

12.     This Consent Decree in no way affects or relieves Defendants of their responsibility to comply with any applicable federal, state, or local law, regulation or permit.

CONSENT DECREE – 4
(C08-5184-RBL)

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   13.   This Consent Decree in no way affects the rights of the United States as against any

2   person not a party to this Consent Decree.

3   14.   The United States reserves any and all legal and equitable remedies available to

4   enforce the provisions of this Consent Decree and applicable law.

5   15.   Nothing in this Consent Decree shall constitute an admission of fact or law by any

6   party.

7   IV.  SPECIFIC PROVISIONS

8   CIVIL PENALTIES

9   16.   Defendants shall pay a civil penalty to the United States, in two equal installments, in

10   the total amount of Thirty Thousand Dollars ($30,000).  Defendants shall pay the first installment

11   no later than thirty (30) days after entry of this consent decree by the Court.  Defendants shall pay

12   the second installment no later than thirty (30) days after the United States Forest Service and the

13   Corps collectively deem the mitigation requirements included in the Statement of Defendants'

14   Responsibilities and the related Wetlands Mitigation Plan complete.  The United States Forest

15   Service and the Corps will notify the Defendants of the completion of the mitigation

16   requirements in writing.  This notification will be sent in writing promptly to the Defendants'

17   address included in Section IX of this document

18   17.   Defendants shall make the above-referenced  payment by FedWire Electronic Funds

19   Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with

20   instructions provided to the Defendants by the Financial Litigation Unit of the United States

21   Attorney's Office for the Western District of Washington and referencing Case Number 08-5184.

22   Any payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be

23   credited on the next business day.

24   18.   Upon payment of the civil penalty required by this Consent Decree, Defendants shall

25   provide written notice, at the addresses specified in Section IX of this Consent Decree, that such

26   payment was made in accordance with Paragraph 17.

27   19.   Civil penalty payments pursuant to this Consent Decree (including stipulated penalty

28   payments under Section VIII) are penalties within the meaning of Section 162(f) of the Internal

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  Revenue Code, 26 U.S.C. § 162(f), or of 26 C.F.R. § 1.162-21 and are not tax deductible

2  expenditures for purposes of federal law.

3  ### RESTORATION, MITIGATION AND PRESERVATION

4  20.    The Defendants will assume responsibilities as specifically prescribed and described

5  in Appendix A, Statement of Defendants' Responsibilities and related documents appended

6  hereto and incorporated herein by reference.

7  ### V. NOTICES AND OTHER SUBMISSIONS

8  21.    Within 30 days after the deadline for completing any task set forth in Appendix A of

9  this Consent Decree, Defendants shall provide the United States with written notice, at the

10  addresses specified in Section IX of this Consent Decree, of whether or not that task has been

11  completed.

12  22.    If the required task has been completed, the notice shall specify the date when it was

13  completed, and explain the reasons for any delay in completion beyond the scheduled time for

14  such completion required by the Consent Decree.

15  23.    In all notices, documents or reports submitted to the United States pursuant to this

16  Consent Decree, the Defendants shall, by their own signature or by the signature of a senior

17  management official, certify such notices, documents and reports as follows:

18  I certify under penalty of law that this document and all attachments were prepared
   under my direction or supervision in accordance with a system designed to assure that
19  qualified personnel properly gather and evaluate the information submitted. Based on my
   inquiry of the person or persons who manage the system, or those persons directly
20  responsible for gathering such information, the information submitted is, to the best of
   my knowledge and belief, true, accurate and complete. I am aware that there are
21  significant penalties for submitting false information, including the possibility of fine and
   imprisonment for knowing violations.

22

23  ### VI. RETENTION OF RECORDS AND RIGHT OF ENTRY

24  Until three (3) years after entry of this Consent Decree, Defendants shall preserve and

25  retain all records and documents now in their possession or control or which come into their

26  possession or control that relate in any manner to the performance of the tasks in Appendix A,

27  regardless of any corporate retention policy to the contrary. Until three (3) years after entry of

28  this Consent Decree, Defendants shall also instruct their contractors and agents to preserve all

documents, records, and information of whatever kind, nature or description relating to the

CONSENT DECREE – 6
(C08-5184-RBL)

1  performance of the tasks in Appendix A.

2      25.     At the conclusion of the document retention period, Defendants shall notify the

3  United States at least 90 days prior to the destruction of any such records or documents, and,

4  upon request by the United States, Defendants shall deliver any such records or documents to the

5  Corps. The Defendants may assert that certain documents, records and other information are

6  privileged under the attorney-client privilege or any other privilege recognized by federal law. If

7  the Defendants assert such a privilege, they shall provide the United States with the following:

8  (1) the title of the document, record, or information; (2) the date of the document, record, or

9  information; (3) the name and title of the author of the document, record, or information; (4) the

10 name and title of each addressee and recipient; (5) a description of the subject of the document,

11 record, or information; and (6) the privilege asserted by Defendants. However, no documents,

12 reports or other information created or generated pursuant to the requirements of the Consent

13 Decree shall be withheld on the grounds that they are privileged.

14     26.     A. Until termination of this Consent Decree, the United States and its authorized

15 representatives and contractors shall have authority at all reasonable times to enter the

16 Defendants' premises to:

17          1) Monitor the activities required by this Consent Decree;

18          2) Verify any data or information submitted to the United States;

19          3) Obtain samples;

20          4) Inspect and evaluate Defendants' restoration and/or mitigation activities; and

21          5) Inspect and review any records required to be kept under the terms and conditions of

22          this Consent Decree and the CWA.

23          B. This provision of this Consent Decree is in addition to, and in no way limits or

24          otherwise affects, the statutory authorities of the United States to conduct

25 inspections, to require monitoring and to obtain information from the Defendants        as

26 authorized by law.

27                                    VI. DISPUTE RESOLUTION

28     27.     Any dispute that arises with respect to the meaning or requirements of this Consent

CONSENT DECREE – 7
(C08-5184-RBL)

Decree shall be, in the first instance, the subject of informal negotiations between the United States and Defendants affected by the dispute to attempt to resolve such dispute. The period for informal negotiations shall not extend beyond thirty (30) days beginning with written notice by one party to the other affected party or parties that a dispute exists, unless agreed to in writing by those parties. If a dispute between the United States and Defendants cannot be resolved by informal negotiations, then the position advanced by the United States shall be considered binding unless, within fourteen (14) days after the end of the informal negotiations period, the Defendants file a motion with the Court seeking resolution of the dispute. The motion shall set forth the nature of the dispute and a proposal for its resolution. The United States shall have thirty (30) days to respond to the motion and propose an alternate resolution. In resolving any such dispute, the Defendants shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the objectives of this Consent Decree and the CWA, and that the Defendants' position will achieve compliance with the terms and conditions of this Consent Decree and the CWA.

28. If the United States believes that a dispute is not a good faith dispute, or that a delay would pose or increase a threat of harm to the public or the environment, it may move the Court for a resolution of the dispute prior to the expiration of the thirty (30) day period for informal negotiations. The Defendants shall have fourteen (14) days to respond to the motion and propose an alternate resolution. In resolving any such dispute, the Defendants shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the objectives of this Consent Decree, and that the Defendants' position will achieve compliance with the terms and conditions of this Consent Decree and the CWA.

29. The filing of a motion asking the Court to resolve a dispute shall not extend or postpone any obligation of Defendants under this Consent Decree, except as provided in Paragraph 39 below regarding payment of stipulated penalties.

## VII. FORCE MAJEURE

30. Defendants shall perform the actions required under this Decree within the time limits set forth or approved herein, unless the performance is prevented or delayed solely by events

CONSENT DECREE – 8
(C08-5184-RBL)

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

which constitute a Force Majeure event. A Force Majeure event is defined as any event arising from causes beyond the control of Defendants, including their employees, agents, consultants and contractors, which could not be overcome by due diligence and which delays or prevents the performance of an action required by this Consent Decree within the specified time period. A Force Majeure event does not include, *inter alia*, increased costs of performance, changed economic circumstances, changed labor relations, normal precipitation or climate events, changed circumstances arising out of the sale, lease or other transfer or conveyance of title or ownership or possession of a site, or failure to obtain federal, state or local permits.

31.   If Defendants believe that a Force Majeure event has affected Defendants' ability to perform any action required under this Consent Decree, Defendants shall notify the United States in writing within seven (7) calendar days after the event at the addresses listed in Section IX. Such notice shall include a discussion of the following:

    A. what action has been affected;

    B. the specific cause(s) of the delay;

    C. the length or estimated duration of the delay; and

    D. any measures taken or planned by the Defendants to prevent or minimize the delay and a schedule for the implementation of such measures.

Defendants may also provide to the United States any additional information that they deem appropriate to support their conclusion that a Force Majeure event has affected their ability to perform an action required under this Consent Decree. Failure to provide timely and complete notification to the United States shall constitute a waiver of any claim of Force Majeure as to the event in question.

32.   If the United States determines that the conditions constitute a Force Majeure event, then the deadline for the affected action shall be extended by the amount of time of the delay caused by the Force Majeure event. Defendants shall coordinate with the Corps to determine when to begin or resume the operations that had been affected by any Force Majeure event.

33.   If the parties are unable to agree whether the conditions constitute a Force Majeure event, or whether the length of time for fulfilling the provision of the Consent Decree at issue

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  should be extended, any party may seek a resolution of the dispute under the procedures in

2  Section VI of this Consent Decree.

3  34.    Defendants shall bear the burden of proving: (1) that the noncompliance at issue was

4  caused by circumstances entirely beyond the control of Defendants and any entity controlled by

5  Defendants, including their contractors and consultants; (2) that Defendants or any entity

6  controlled by Defendants could not have foreseen and prevented such noncompliance; and (3) the

7  number of days of noncompliance that were caused by such circumstances.

8  <center>VIII.    STIPULATED PENALTIES</center>

9  35.    After entry of this Consent Decree, if Defendants fail to timely fulfill any requirement

10 of the Consent Decree (including Appendix A and related documents), the Defendants shall pay a

11 stipulated penalty to the United States for each violation of each requirement of this Consent

12 Decree as follows:

13     A. For Day 1 up to and including        $5,000.00 per day
        Day 30 of non-compliance
14
       B. For Day 31 up to and including      $10,000.00 per day
15        60 of non-compliance

16     C. For Day 61 and beyond               $15,000.00 per day
          of non-compliance
17

18 Such payments shall be made without demand by the United States on or before the last day of

19 the month following the month in which the stipulated penalty accrued.

20 36.    Any disputes concerning the amount of stipulated penalties, or the underlying

21 violation that gives rise to the stipulated penalties, that cannot be resolved by the parties pursuant

22 to the Dispute Resolution provisions in Section VI and/or the Force Majeure provisions in

23 Section VII shall be resolved upon motion to this Court as provided in Paragraphs 27 and 28.

24 37.    The filing of a motion requesting that the Court resolve a dispute shall stay

25 Defendants' obligation to pay any stipulated penalties with respect to the disputed matter pending

26 resolution of the dispute.  Notwithstanding the stay of payment, stipulated penalties shall

27 continue to accrue from the first day of any failure or refusal to comply with any term or

28 condition of this Consent Decree.  In the event that Defendants do not prevail on the disputed

   issue, stipulated penalties shall be paid by Defendants as provided in this Section.

CONSENT DECREE – 10
(C08-5184-RBL)

1   38.   To the extent Defendants demonstrate to the Court that a delay or other non-

2   compliance was due to a Force Majeure event (as defined in Paragraph 30 above) or otherwise

3   prevail on the disputed issue, the Court shall excuse the stipulated penalties for that delay or non-

4   compliance.

5   39.   In the event that a stipulated penalty payment is applicable and not made on time,

6   interest will be charged in accordance with the statutory judgment interest rate provided for in 28

7   U.S.C. § 1961. The interest shall be computed daily from the time the payment is due until the

8   date the payment is made. The interest shall also be compounded annually.

9   40. Defendants shall make any payment of a stipulated penalty by FedWire Electronic Funds

10  Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with

11  current electronic funds transfer procedures, referencing Case Number 08-5184. Payment shall

12  be made in accordance with instructions provided to the Defendants by the Financial Litigation

13  Unit of the United States Attorney's Office for the Western District of Washington. Any

14  payments received by the Department of Justice after 4:00 P.M. (Eastern Time) will be credited

15  on the next business day. Further, upon payment of any stipulated penalties, Defendants shall

16  provide written notice, at the addresses specified in Section IX of this Decree.

17                          IX. ADDRESSES

18  41.   All notices and communications required under this Consent Decree shall be made to

19  the parties through each of the following persons and addressed listed below. Notices submitted

20  pursuant to this Section shall be deemed submitted upon mailing unless otherwise provided for in

21  this Consent Decree or by the mutual written agreement of the parties. Any party may, by written

22  notice to the other party, change its designated notice recipient or notice address provided above.

23

24

25  A.  TO THE ARMY CORPS OF ENGINEERS:

26  (1) Siri Nelson
        District Counsel
27      United States Army Corps of Engineers
        P.O. Box 3755
28      Seattle, WA 98124

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    Steve Gagnon
     U.S. Corps of Engineers
2    Regulatory Branch
     2108 Grand Boulevard
3    Vancouver, WA 98661

4
     B. TO THE UNITED STATES DEPARTMENT OF JUSTICE
5
     Harold Malkin
6    Kayla Stahman
     United States Attorneys Office
7    Western District of Washington
     700 Stewart St., Suite 5220
8    Seattle, WA 98101-1271

9
     Russell Young
10   Assistant Chief, Environmental Defense Section
     Environment and Natural Resources Division
11   U.S. Department of Justice
     P.O. Box 23986
12   Washington, D.C. 20026-3986

13   C. TO THE FOREST SERVICE

14   Michael E. Trow
     United States Department of Agriculture
15   Office of the General Counsel
     1220 Southwest 3rd Ave.
16   1734 Federal Building
     Portland, OR 97204
17
     Pam Campbell
18   United States Department of Agriculture
     Forest Service
19   Columbia River Gorge National Scenic Area
     902 Wasco Street, Suite 200
20   Hood River, OR 97031

21   D. TO DEFENDANTS:

22   Bonneville Hot Springs
     d/b/a Bonneville Hot Springs Resort
23   Pirfil ("Pete") Cam
     Elena Cam
24   1252 East Cascade Drive
     North Bonneville, WA 98639

25
                    X. COSTS OF SUIT
26
     42.    Each party to this Consent Decree shall bear its own costs and attorneys' fees in this
27
     action. Should Defendants subsequently be determined by the Court to have violated the terms
28
     or conditions of this Consent Decree, Defendants shall be liable for any costs or attorneys' fees

CONSENT DECREE – 12

1 incurred by the United States in any action against Defendants for noncompliance with or
2 enforcement of this Consent Decree.

3 ## XI. PUBLIC COMMENT

4     43.     The parties acknowledge that after the lodging and before the entry of this Consent
5 Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7,
6 which provides for public notice and comment. The United States reserves the right to withhold
7 or withdraw its consent to the entry of this Consent Decree if the comments received disclose
8 facts which lead the United States to conclude that the proposed judgment is inappropriate,
9 improper, or inadequate. The Defendants agree not to withdraw from, oppose entry of, or to
10 challenge any provision of this Consent Decree, unless the United States has notified the
11 Defendants in writing that it no longer supports entry of the Consent Decree.

12 ## XII. CONTINUING JURISDICTION OF THE COURT

13     44.     This Court shall retain jurisdiction over this action in order to enforce or modify the
14 Consent Decree consistent with applicable law or to resolve all disputes arising hereunder as may
15 be necessary or appropriate for construction or execution of this Consent Decree. During the
16 pendency of the Consent Decree, any party may apply to the Court for any relief necessary to
17 construe and effectuate the Consent Decree.

18 ## XIII. MODIFICATION

19     45.     Upon its entry by the Court, this Consent Decree shall have the force and effect of a
20 final judgment. Any modification of this Consent Decree shall be in writing, and shall not take
21 effect unless signed by both the United States and the Defendants and approved by the Court.

22 ## XIV. SIGNATORY

23     46.     The undersigned representative of Bonneville Hot Springs Inc., d/b/a Bonneville Hot
24 Springs Resort certifies that he or she is authorized to enter into this Consent Decree and to
25 execute and legally bind Bonneville Hot Springs Inc., to the terms and conditions of this Consent
26 Decree and meets the requirements for authorize signatory found in 40 C.F.R. § 122.22.
27     47.     All signatories to this Consent Decree have reviewed and considered the substance of this
28 Decree and have reviewed the Decree with counsel. As such, Defendants hereby agree not to

CONSENT DECREE – 13
(C08-5184-RBL)

1  oppose entry of the Consent Decree by this Court or challenge any provision of this Consent

2  Decree.

3  ## XV. TERMINATION

4  48.      Except for Paragraph 20, this Consent Decree may be terminated by either of the

5  following:

6  A.      Defendants and the United States may at any time make a joint motion to the

7  Court for termination of this Decree or any portion of it; or

8  B.      Defendants may make a unilateral motion to the Court to terminate this Decree after

9  each of the following has occurred:

10        1.      Defendants have obtained and maintained compliance with all

11  provisions of this Consent Decree and the CWA for three (3) consecutive

12  years;

13        2.      Defendants have paid all penalties and other monetary obligations hereunder

14  and no penalties or other monetary obligations are outstanding or owed to the United States;

15        3.      Defendant's have certified compliance pursuant to subparagraphs 1 and 2 above

16  to the Court and all Parties; and

17        4.      The United States shall notify Defendants within forty-five (45) days of

18  receiving such certification from the Defendants either that the United States objects to the

19  request to terminate or that it does not object to the termination of the Consent Decree.  If the

20  Corps or USFS disputes Defendant's full compliance with the Consent Decree and related

21  documents, this Consent Decree shall remain in effect pending resolution of the dispute by

22  the Parties or the Court.

23  **IT IS SO ORDERED.**

24  Dated and entered this _11th_ day of _September,_ 2008.

25

26

27

28         United States District Judge

United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  PRESENTED ON BEHALF OF THE UNITED STATES:

2  DATED this ____ day of July, 2008.    JEFFREY C. SULLIVAN
3                                        United States Attorney

4
5                                        HAROLD MALKIN, WABA 30986
                                         Assistant United States Attorney
6
7                                        KAYLA STAHMAN, CABA 228931
                                         Assistant United States Attorney
8                                        United States Attorney's Office
                                         700 Stewart Street, Suite 5220
9                                        Seattle, Washington 98101-1271
                                         206-553-4068 (telephone)
10                                       206-553-4073 (fax)
                                         kayla.stahman@usdoj.gov
11
                                         Attorneys for the United States America
12
13                                       BILL NELSON
14                                       District Counsel
                                         United States Army Corps of Engineers
15                                       P.O. Box 3755
                                         Seattle, WA 98124
16
17  PRESENTED ON BEHALF OF THE DEFENDANTS:

18  DATED this ____ day of July, 2008.
19                                       PETER CAM, Pro Se
                                         for himself and Bonneville Hot Springs Inc., d/b/a
20                                       Bonneville Hot Springs Resort
                                         P.O. Box 356
21                                       North Bonneville, WA 98639

22
23                                       ELENA CAM, Pro Se

24
25
26
27
28

CONSENT DECREE - 15                      United States Attorney
(C06-5184-RBL)

# Exhibit B
## Appendix A: Statement of Defendants' Responsibilities

# APPENDIX A: STATEMENT OF DEFENDANTS' RESPONSIBILITIES

**General Terms and Conditions**

1. The properties covered by this Agreement ("Restoration Site") are as follows:

   Longview Fibre: T.2N, R.7E, sec. 16, Tax Lot 201

   Cams: T.2N, R.7E, sec. 16, Tax Lot 200

   United States (National Forest System): T.2N, R.7E, sec. 16, Tax Lot 202

   All three parcels are subject to a Williams Northwest Pipeline ("Williams") easement.

2. Pirfil Cam ("Cam"), Elena Cam, and Bonneville Hot Springs Inc., d/b/a Bonneville Hot Springs Resort (collectively "Cams") will defend and indemnify and hold harmless the United States, including the United States Forest Service ("USFS"), against any and all liability, claims, suits, losses, costs and legal fees caused by, and arising out of, or resulting from the Consent Decree and the related Statement of Defendants' Responsibilities.

3. All contractors hired by Cam for restoration work are required to indemnify the United States against any liability for damage to life or property arising from the occupancy or use of National Forest System Lands. Said contractor(s) are required to have the insurance company name the *United States Government* (Forest Service) as an additionally insured party. Any exclusions listed on the Certificate of Insurance shall not include any of the activities covered under the Consent Decree or Statement of Defendants' Responsibilities. The required minimum coverage shall be $1,000,000 Combined Single Limit. The following additional insured clauses *shall be shown in verbatim* on the face of the Certificate of Insurance or Binder and as a clause or an endorsement in the insurance policy:

   **"It is understood and agreed that the United States Government is additional insured solely as respects liability arising from operations of the named insured."**

   **"It is understood and agreed that the coverage under this policy will not be changed or its provisions changed or deleted before thirty (30) days written notice to the:**

1  **United States Government,**
   **c/o Columbia River Gorge National Scenic Area**
2  **902 Wasco, Suite 200**
   **Hood River, OR 97031**
3  **ATTN: Pam Campbell"**

4  United States Government, c/o USDA Forest Service, shall be listed in the

5  certificate holder box. A Certificate of Insurance and Endorsement of Additional

6  Insured must be provided to the Forest Service and found to be acceptable before

7  field work can be initiated.

8  4. The USFS will retain final review and approval authority on all contractors,

9  contractor qualifications, work methods, and final acceptance of all work. Such

10  approval will not be unreasonably withheld or delayed.

11  5. The Cams, current or former employees of the Cams, or relatives of the Cams

12  shall not be allowed to perform work or to direct the performance of work

13  specified in the Consent Decree, the Statement of Defendants' Responsibilities

14  and related documents including the Revised Wetland Mitigation Plan

15  ("Mitigation Plan").

16  6. The Revised Mitigation Plan dated July 29, 2005, and prepared by The Resource

17  Company Inc. is hereby amended to adopt all changes as indicated in the letter

18  dated January 5, 2006, from the USFS to Pete Cam, and shall hereafter be

19  referred to as the Mitigation Plan.   The scope of work in the Mitigation Plan

20  will be updated with the 2008 General Work Schedule, as attached to this

21  document. Should delays associated with settlement of this matter, outside the

22  control of the Cams, make it impossible to comply with the 2008 General Work

23  Schedule, the Cams will be required to comply with the 2009 General Work

24  Schedule. Both documents are attached to this statement. Since the Mitigation

25  Plan, in general, is outdated and conditions have changed, and because it was not

26  developed to include mitigation work on private land, the Mitigation Plan will be

27  used *only* as a guideline. USFS personnel retain the right to make any changes to

28  the Mitigation Plan determined to be necessary before or during implementation

1   of the mitigation work. Such changes will be limited to those required due to the

2   passage of time since the Mitigation Plan was developed, those previously

3   unknown or undiscovered unauthorized activities that threaten overall restoration

4   goals, and to address unintended consequences resulting from heavy equipment

5   operations in sensitive habitat areas.

6   7. Resolution of any discrepancies or conflicts among the Consent Decree and

7   related Statement of Defendants' Responsibilities and all other documents

8   directing or controlling restoration work such as the Mitigation Plan and state

9   and local requirements/permits will be decided by the USFS and will generally

10   favor a course of action that best complies with state, local and federal law and

11   one that is determined to be most beneficial to the restoration goals.

12   8. Where USFS personnel are specified in the Consent Decree, the Statement of

13   Defendants' Responsibilities and related documents including the Mitigation

14   Plan, United States Army Corps of Engineers ("Corps") employees have equal

15   authority in regards to access, oversight, and changes to work specifications

16   contained in the Consent Decree and related Statement of Defendants'

17   Responsibilities, but any changes to work specifications shall be consistent with

18   instructions or directions provided by USFS personnel.

19

20   **The Cams Responsibilities**

21

22   1. The Cams will obtain all necessary permit(s) for performance of work specified

23   in the Consent Decree and related Statement of Defendants' Responsibilities,

24   including work to be done on all three subject parcels. The United States will

25   facilitate application of the permits to the extent necessary and reasonable.

26   Required permits may include but are not limited to: (1) a Shoreline Management

27   Act Permit from Skamania County; (2) a Hydraulic Project Approval from

28   Washington State Department of Fish and Wildlife; and (3) Use Authorizations

1   for State-Owned Aquatic Lands from the Department of Natural Resources. A
2   Joint Aquatic Resources Permit Application can be used to apply for most of
3   these permits. Help in determining permitting requirements can be obtained
4   from the Washington State Office of Regulatory Assistance at 800-917-0043 or
5   by internet at www.ora.wa.gov/permithelp/default.asp. All requirements
6   specified in said permit(s) must be complied with during implementation of all
7   mitigation work.

8   2. The Cams will comply with all terms and conditions of North Bonneville
9   Municipal Code 2110 – Resource Lands and Critical Areas Protection – for those
10  restoration areas falling within the North Bonneville Urban Area.

11  3. The Cams will sign the Consistency Review Application within one (1) week of
12  being requested to do so by the USFS, fax the signed copy to Pam Campbell at
13  541-386-1916 the same day, and mail the original signature page to the Columbia
14  River Gorge National Scenic Area. The Cams will also comply with all
15  requirements specified in the Consistency Determination for National Forest
16  System ("NFS") land obtained from the Forest Service and the Consistency
17  Determination for private land obtained from Skamania County.

18  4. The Cams will ensure completion of all required actions in accordance with the
19  2008 General Work Schedule provided by USFS personnel and attached to this
20  Statement of Defendants' Responsibilities made part hereof. Subject to
21  Paragraph Six (6) of the General Terms and Conditions of this document,
22  scheduled dates are not negotiable and compliance with completion dates is
23  mandatory. Should delays associated with settlement of this matter, outside the
24  control of the Cams, make it impossible to comply with the 2008 General Work
25  Schedule, the Cams will be required to comply with the 2009 General Work
26  Schedule.

27  5. All of the activities on NFS land shall be completed in accordance with all
28  measures identified in the Decision and Consistency Determination for Greenleaf

1  Creek Wetland Restoration near North Bonneville, WA dated January 2, 2008,
2  number CD-07-07-G.

3  6.  The activities must also comply with any additional requirements imposed by
4      Williams for mitigation work occurring within the Williams easement area, and
5      Longview Fibre Paper and Packaging, Inc. ("Longview Fibre") for work
6      performed on land under their ownership.

7  7.  The Cams must record a deed restriction with Skamania County prohibiting any
8      future disturbance to wetland or other aquatic resources on land owned by the
9      Cams on which mitigation work was performed under the Consent Decree and
10     related Statement of Defendants' Responsibilities. The deed restriction shall
11     include a metes and bounds legal description of the wetland area ("Wetland
12     Survey Map") developed by a professional land surveyor licensed in the State of
13     Washington, and a wetland survey map.  The Cams must file this Deed
14     Restriction of record with the County Clerk of Skamania County, Washington
15     within six (6) months after the United States Forest Service and the Corps
16     collectively notify the Cams in writing that the mitigation requirements included
17     in the Consent Decree, Statement of Defendants' Responsibilities and related
18     documents including the Mitigation Plan are complete.  This notification will be
19     sent in writing promptly to the Cams's address included in Section IX of the
20     related Consent Decree. The Cams must provide a copy of the recorded Deed
21     Restriction to the USFS, Columbia River Gorge National Scenic Area, within 30
22     days of filing.  The required deed restriction is attached to this document.  To
23     ensure accuracy, language in the deed restriction must be reviewed and approved
24     by USFS personnel prior to recording.

25
26 8.  The Cams must pay to re-establish the surveyed boundary line between the Cams
27     property and NFS land. This line was initially established by a Bureau of Land
28     Management survey in 2003 and subsequently disturbed by the Cams's continued

activities. This line is to be re-established by a qualified surveyor licensed in the State of Washington. The line is to be demarcated by placement of carsonite boundary markers and location and reestablishment of any federally established survey pins that have been disturbed. Any effort to mask the carsonite boundary signs with vegetation must take place fully on land owned by the Cams and must not result in any disturbance to the signs.

9. The Cams will reimburse the United States $7,500 for the cost of the boundary line survey and posting of the surveyed boundary line. This line was initially established by a Bureau of Land Management survey in 2003 and subsequently disturbed by the Cams's continued activities. This payment will be due no later than thirty (30) days after the USFS and the Corps collectively notify the Cams in writing that the mitigation requirements included in the Consent Decree, Statement of Defendants' Responsibilities and related documents including the Mitigation Plan are complete. This notification will be sent in writing promptly to the Cams's address included in Section IX of the related Consent Decree.

10. The Cams must arrange for the removal all sod and non-native grasses planted/seeded on NFS land. Following removal, the Cams must decompact the ground surface and replant the area as specified in the Mitigation Plan.

11. The Cams must arrange for the removal of all landscape trees and shrubs planted on NFS land and any associated landscaping such as artificially placed rock(s) or other hardscape.

12. The Cams must arrange for removal and/or modification of any and all drainpipe that may be having a negative effect on the beneficial function of the wetland as determined by a qualified professional. The Cams must also arrange for removal of all drainpipe placed on NFS land on the steep hillside north of the Resort.

13. The Cams must hire a contractor certified by the State of Washington for herbicide application to apply the initial two herbicide applications in an area to

1 | be delineated by USFS personnel. The USFS will specify the type, amount,
2 | application method and concentration of herbicide to be applied to NFS land.
3 | Herbicide applications may be used with other weed controls methods such as
4 | scalping at USFS discretion.

5. 14. The Cams will hire a qualified specialist approved by USFS personnel to oversee
6 | all aspects of the restoration work. This includes but is not limited to: (1)
7 | determining the extent of the original wetland; (2) determining the depth of fill to
8 | be removed by utilizing a professionally recognized method; (3) treatment and/or
9 | appropriate disposal of any additional fill or improvement(s) not described in the
10 | Mitigation Plan; (4) directing the mechanized equipment; (5) field level
11 | implementation coordination with Williams and Longview Fibre; and (6)
12 | oversight of all planting and invasive plant control activities, all to achieve the
13 | outcomes specified in the Consent Decree and related Statement of
14 | Responsibilities of Defendants' and in the Mitigation Plan and general work
15 | schedule. The depth of fill is variable throughout the wetlands and must be
16 | removed as close to original contours as possible to ensure the success of the
17 | restoration work.

18. 15. The Cams will propose several contractors to USFS. USFS may reject the
19 | proposed contractors for any reason. Should USFS decline to choose any of the
20 | Cams's proposed contractors the Cams will select and hire a contractor from a
21 | list provided by USFS personnel to perform all mitigation work requiring the use
22 | of heavy equipment. If a qualified contractor cannot be reached between Cams
23 | and USFS personnel, selection of a contractor will be made by USFS personnel
24 | and Cams will assume all costs associated with retaining the contractor for the
25 | specified work.

26. 16. Contractors will ensure all heavy equipment is weed free and in sound operating
27 | condition free of leaks or other sources of potential contaminants prior to
28 | entering the work site.

17. Replanting of the wetland will be in accordance with the Mitigation Plan. No planting shall occur until the excavation of fill in the wetland has been inspected and accepted by USFS personnel. Modifications of the planting plan must be approved by USFS personnel.

18. If monitoring, as specified in the Mitigation Plan, indicates further action is needed within (3) three years of completion of the restoration work, the Cams agrees to complete the necessary work but only after receiving written approval to enter onto NFS land for such specified purposes and under the supervision of USFS personnel on site unless otherwise agreed. The Cams shall not enter onto the restored portion of NFS land for any purpose without the express written permission of USFS personnel, nor shall any work be conducted without USFS personnel at the site unless otherwise agreed. Required actions under this item are limited to those specified in the Mitigation Plan including monitoring and maintenance requirements as specified in the Mitigation Plan are limited to trash removal, erosion control, plan mortality, and invasion of undesirable plant species.

19. The Cams will allow access to the work site for all equipment and personnel across any and all property owned by the Cams as deemed appropriate and necessary by USFS personnel. Advance notice of heavy equipment move in/out will be provided to the Cams. Operation of heavy equipment will be limited to Monday through Friday from 8:00 a.m. to 7:00 p.m. unless otherwise agreed.

# Exhibit C
## 2008 General Work Schedule

| 2008 General Work Schedule | | | | |
|---|---|---|---|---|
| Task | Who | Start Date | Completed By Date | Complete? |
| FS Nepa | USFS | | Dec-07 | Y |
| FS Consistency Review | USFS | | Dec-07 | Y |
| Permission Letter From Longview | USFS | Sent out 2/15/2008 | 5/15/2008 | Y |
| Prepare Skamania County Consistency Review | USFS | Submit by 6/2/2008 | Receive Permit by 9/2/2008 | |
| Additional State Review-SEPA | USFS | Submit by 6/2/2008 | Receive SEPA by 7/7/2008 | |
| Select Consultant for Project Oversight | Cam with concurrence from USFS, ACOE, Longview Fibre | | 6/25/2008 | |
| Meet With Consultant to Define Scope of Work | Cam, USFS, ACOE, Longview Fibre | | 7/1/2008 | |
| ACOE/WDFW Permit/JARPA | Consultant | Submit by 07/11/2008 | Receive Permit by 09/01/2008 | |
| Select Equipment Contractor | Cam with concurrence from USFS, ACOE, Longview Fibre | | 8/15/2008 | |
| Survey Property Boundary Lines | Surveyor Hired by Cam | | 9/1/2008 | |
| Lay Out Wetland Excavation and Identify Fill Storage Areas, Identify and Lay Out all other Ground Disturbing Work to Be Completed by Mechanical Equipment | Layout by consultant, concurrence by ACOE,USFS, Williams Pipeline and Longview Fibre | | 9/1/2008 | |
| Field Meeting With Landowners to go Over Final Work Items and get Agreement on Final Excavation Scope of Work | Consultant with concurrence by ACOE,USFS, Williams Pipeline and Longview Fibre | | 9/1/2008 | |
| Make Any Field Adjustments Agreed To By Land Owners | Consultant | | 9/8/2008 | |
| Fish Removal From Trench | USFS | 9/9/2008 | 9/9/2008 | |
| Start Excavation Work | Consultant & Equipment Contractor | 9/10/2008 | 9/12/2008 | |
| Scalp Weeds off Floodplain and Dispose | Consultant & Equipment Contractor | | 9/30/2008 | |
| Excavate Main Wetland and All Other Floodplain/Wetland Excavation and Fill Removal | Consultant & Equipment Contractor | | 9/30/2008 | |
| Pull Sod and Perforated Pipe on USFS Land by Main Building | Consultant & Equipment Contractor | | 10/3/2008 | |
| Remove Landscape Vegetation and Hardscape from NFS Land | Consultant and Crew Hired by Cam | | 10/3/2008 | |
| First Herbicide Application-Broadcast | Consultant and Certified Application with USFS concurrence | | 10/30/2008 | |
| Plant Floodplain Area with Grasses | Consultant and Crew Hired by Cam | 10/30/2008 | 12/10/2008 | |
| Plant Floodplain and Sod Removal Area with trees/shrubs | Consultant and Crew Hired by Cam | 3/1/2009 | 4/30/2009 | |
| Plant Wetland | Consultant and Crew Hired by Cam | 3/1/2009 | 4/30/2009 | |
| Second Herbicide Application-Spot Spray | Consultant and Certified Application with USFS concurrence | | April 2009;late May 2009; late June 2009; late July 2009 | |
| Monitor Plant Survival Each Year and Replant Where Necessary | Consultant and Crew Hired by Cam with concurrence from USFS, ACOE, Longview Fibre | 03/01/09 | 12/31/2013 | |
| Third Herbicide Application-Spot Spray | USFS | | 2010 | |
| Fourth Herbicide Application-Spot Spray | USFS | | 2011 | |

# Exhibit D
## 2009 General Work Schedule

# 2009 General Work Scheadule

| Task | Who | Item In Settlement Agree | Start Date | To Be Completed By Date | Complete? | Date Completed |
|---|---|---|---|---|---|---|
| FS Nepa | USFS | | | Dec-07 | Y | Dec-07 |
| FS Consistency Review | USFS | | | Dec-07 | Y | Dec-07 |
| Permission Letter From Longview | USFS | | Sent out 2/15/2008 | 5/15/2008 | Y | 5/15/2008 |
| Prepare Skamania County Consistency Review | USFS | | Submit by 6/2/2008 | Receive Permit by 9/2/2008 | | |
| Additional State Review-SEPA | USFS | | Submit by 6/2/2008 | Receive SEPA by 7/7/2008 | | |
| Select Consultant for Project Oversight | Cam with concurrance from USFS, ACOE, Longview Fibre | | | 5/1/2009 | | |
| Meet With Consultant to Define Scope of Work | Cam, USFS, ACOE, Longview Fibre | | | 5/15/2009 | | |
| ACOE/WDFW Permit/HARPA | Consultant | | Submit by 06/1/2009 | Receive Permit by 06/15/2009 | | |
| Select Equipment Contractor | Cam with concurrance from USFS, ACOE, Longview Fibre | | | 8/15/2009 | | |
| Survey Property Boundary Lines | Surveyor Hired by Cam | | | 9/1/2009 | | |
| Lay Out Wetland Excavation and Identify Fill Storage Areas. Identify and Lay Out all other Ground Disturbing Work to Be Completed by Mechanical Equipment | Layout by consultant, concurrance by ACOE,USFS, Williams Pipeline and Longview Fibre | | | 8/15/2009 | | |
| Field Meeting With Landowners to go Over Final Work Items and get Agreement on Final Excavation Scope of Work. | Consultant with concurrance by ACOE,USFS, Williams Pipeline and Longview Fibre | | | 9/1/2009 | | |
| Make Any Field Adjustments Agreed To By Land Owners | Consultant | | | 9/9/2009 | | |
| Fish Removal From Trench | USFS | | 9/9/2009 | 9/9/2009 | | |
| Start Excavation Work | Consultant & Equipment Contractor | | 9/10/2009 | 9/12/2009 | | |
| Scalp Weeds off Floodplain and Dispose | Consultant & Equipment Contractor | | | 9/12/2009 | | |
| Excavate Main Wetland and All Other Floodplain/Wetland Excavation and Fill Removal | Consultant & Equipment Contractor | | | 9/30/2009 | | |
| Pull Sod and Perforated Pipe on USFS Land by Main Building | Consultant & Equipment Contractor | | | 10/2/2009 | | |
| Remove Landscape Vegetation and Hardscape from NFS Land | Consultant and Crew Hired by Cam | | | 10/3/2009 | | |
| First Herbicide Application-Broadcast | Consultant and Certified Application with USFS concurrance | | | 10/30/2009 | | |
| Plant Floodplain Area with Grasses | Consultant and Crew Hired by Cam | | 10/30/2009 | 12/10/2009 | | |
| Plant Floodplain and Sod Removal Area with trees/shrubs | Consultant and Crew Hired by Cam | | 3/1/2010 | 4/9/02810 | | |
| Plant Wetland | Consultant and Crew Hired by Cam | | 3/1/2010 | 4/30/2010 | | |
| Second Herbicide Application-Spot Spray | Consultant and Certified Application with USFS concurrance | | | April 2010;late May 2010; late June 2010; late July 2010 | | |
| Monitor Plant Survival Each Year and Replant Where Necessary | Consultant and Crew Hired by Cam with concurrance from USFS, ACOE, Longview Fibre | | 03/01/10 | 12/31/2014 | | |
| Third Herbicide Application-Spot Spray | USFS | | | 2011 | | |
| Fourth Herbicide Application-Spot Spray | USFS | | | 2012 | | |

# Exhibit E
## Deed Restriction

# DEED RESTRICTION

Pirfil ("Pete") Cam and Elena Cam (also "Owner") are the owners of the real property more particularly described and shown in Exhibit "A" (hereinafter the "Property") attached hereto and made a part hereof. The Property is also referenced in "The Revised Mitigation Plan for Bonneville Hot Springs Project dated July 29, 2005 as amended." One of the conditions of the Consent Decree between the United States and Bonneville Hot Springs Inc., Pirfil ("Pete") Cam and Elena Cam requires restrictions be placed on the deed for the Property for the purpose of providing compensation for adverse impacts to waters of the United States. The intent of this document is to assure that the Property will be retained and maintained forever predominantly in the natural vegetative and hydrologic condition described in success criteria of the Mitigation Plan. Activities, which may, in the future, be conducted within the Property that will affect the vegetative and or hydrologic conditions outlined in the success criteria of the Mitigation Plan, must be coordinated with and approved by the United States Army Corps of Engineers ("USACE"), prior to initiation.

The parties to this agreement include the Property owner(s) who by their signature accept the third-party rights of enforcement herein and agree that the deed restrictions will be subject to the following conditions:

1) **Property Description**

   **(Applicant)** will provide as Attachment A-1:

   a) On-site photographs taken at appropriate locations on the Protected Property of the wetland, trench area, and any other portion of the Greenleaf Creek floodplain where mitigation work was performed. Appropriate locations shall be defined as those locations that clearly and completely document the wetland the trench area and any other portion of the Greenleaf floodplain where mitigation work was performed; and

   b) A copy of the deed with an accurate legal description or a current survey certified by a Professional Land Surveyor (PLS) of the Protected Property.

   c) A copy of a verified wetland survey map, which delineates all waters of the United States, including wetlands within the Property.

2) **Term**

   These restrictions shall run with the land in perpetuity and be binding on all future owners, heirs, successors, administrators, assigns, lessees, or other occupiers and users.

3) **General**

   The following activities are prohibited on the Property subject to this Deed Restriction:

   (a) Filling, excavation, or alteration of the Property that will affect the success criteria outlined in the Mitigation Plan unless approved in writing in advance by the USACE;

1

(b) Placing dredged or fill material on Property except as necessary for completion of mitigation;

(c) Commercial, industrial, agricultural, residential developments, buildings or structures, including but not limited to signs;

(d) Removal or destruction of trees or plants, mowing, draining, plowing, mining, removal or topsoil, sand, rock, gravel or other materials in the absence of express permission from USACE;

(e) Operation of motorized vehicles of any kind except as necessary for completion of mitigation work or in emergency situations;

(f) Application of insecticides or herbicides except those specifically designated for wetland use;

(g) Grazing or keeping of cattle, sheep, horses or other livestock;

(h) Placement of utility lines either overhead or within the Property including telephone, electrical, gas, water or sewer. Existing lines may remain.

(i) Modifications to the hydrology of the Property, either directly or indirectly, that would allow more water onto, or that would drain water away from, the Property. Such prohibited modifications include but are not limited to ditching, changes to any water control structures, or alternations to any naturally occurring features.

## 4) Rights of Access and Entry

The USACE and the United States Forest Service shall have the right to enter and go upon the Property for purposes of inspection, and to take actions including but not limited to scientific observations and studies, and collection of samples. This right of access will be permitted during reasonable times.

## 5) Enforcement

In the event of a breach of the restrictions by the Owner, or a third party working with the permission of or under the direction of the Owner, the USACE must be notified immediately. If the USACE becomes aware of a breach of this Agreement, the USACE will notify the Owner of the breach. The Owner shall have thirty (30) days after receipt of such notice to undertake actions that are reasonably calculated to promptly correct the conditions constituting the breach. If the Owner corrects the conditions constituting the breach in a timely and reasonable manner, no further action is warranted or authorized. If the Owner fails to initiate such corrective action within thirty (30) days or fails to complete the necessary corrective action, the USACE may undertake such actions, including legal proceedings, as are necessary to effect such corrective action. Any forbearance on the part of the USACE to exercise its rights in the event of a breach of the restrictions shall not be deemed or construed to be a waiver of their rights hereunder in the event of any subsequent failure of the Property owner to comply.

If any provision of this Deed Restriction, or the application thereof to any person or circumstance, is found to be invalid, the remainder of the provisions of this Deed Restriction, or the application of such provisions to persons or circumstances other then those as to which it is found to be invalid, as the case may be, shall not be affected thereby.

Dated this _____ day of _____, 20_____.

By:

3